**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MORAN FOODS, LLC d/b/a Save-A-Lot, Ltd.<br><br>        Plaintiff,<br><br>    v.<br><br>235 LAZARO MARKET LLC,<br><br>and<br><br>ANTHONY PENA,<br><br>and<br><br>KINGS GROCERY LLC,<br><br>and<br><br>YONY PEREZ<br><br>        Defendants. | Case No.<br><br><br><br>Jury Trial Demanded |

## <u>COMPLAINT</u>

Plaintiff Moran Foods, LLC d/b/a Save-A-Lot, Ltd. ("Plaintiff" or "SAL"), by and through its undersigned counsel, brings this Complaint against Defendants 235 Lazaro Market LLC ("235 Lazaro Market" or "Licensee"), Anthony Pena ("Pena"), Kings Grocery LLC ("Kings Grocery"), and Yony Perez ("Perez") (collectively, "Defendants"), and in support thereof, alleges the following:

### NATURE OF THIS ACTION

1.      SAL owns certain trademarks, service marks, copyrights, and logos (collectively, the "SAL IP") for use in connection with the operation of grocery stores branded as SAL.

2.    SAL licenses the SAL IP to licensees who operate SAL stores around the country.

3.    In addition to providing licensees with permission to use the SAL IP, licensees are also given access to various programs, procedures, systems, and products developed by SAL (the "SAL Program") and access to purchase certain grocery products, including SAL's private label products (the "SAL Inventory").

4.    SAL seeks injunctive relief and monetary damages for Defendants' trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq*., state law claims arising from Defendants' infringing conduct, and related state law claims arising from material breaches of the license and supply agreement between 235 Lazaro Market and SAL (the "LSA") and fraudulent misrepresentations made by 235 Lazaro Market and Pena in connection with the LSA.

5.    Under the LSA, 235 Lazaro Market agreed to continuously operate a SAL-branded grocery store (the "Store") located at 235 South Street, Holyoke, Massachusetts 01040 (the "Store Location") and purchase inventory from SAL for a five-year term (the "Term") that would renew automatically.

6.    Pena is the Owner of 235 Lazaro Market and signed the LSA with SAL on its behalf.

7.    At all times pertinent hereto, Perez managed the Store and was responsible for overseeing its day-to-day operations.

8.    Two key features of the LSA were that: (a) SAL granted 235 Lazaro Market a nonexclusive license during the term of the LSA to use the SAL IP to operate a hard discount, limited assortment grocery store at the Store Location; and (b) 235 Lazaro Market was obligated

to purchase and sell certain food and non-food products that included SAL's exclusive, private label products.

9.      The LSA also included a non-compete provision under which 235 Lazaro Market and its key officers, directors, and management personnel including Pena and Perez agreed not to directly or indirectly engage in, or have an interest in, a competing limited assortment store or directly or indirectly sell the Store assets to a competitor of SAL without SAL's prior written consent.

10.     SAL had previously entered into a lease for the Store Location (the "Lease") in 1988 and was the tenant for the Store Location continuously until May 13, 2021 when it assigned the Lease to 235 Lazaro Market.

11.     235 Lazaro Market was obligated to extend the term of the Lease in order to comply with its obligation under the LSA to continuously operate the Store at the Store Location.

12.     The Lease could be extended under the lease agreement for an additional five or ten years.

13.     Pena represented to SAL that he had secured an extension of the Lease.

14.     Based on Pena's representation, SAL assumed that 235 Lazaro Market would continue to operate the Store at the Store Location, as it was obligated to do under the LSA. Further, SAL did not seek to extend the Lease itself based on Pena's representation that he had already secured an extension of the Lease.

15.     However, on March 12, 2024, 235 Lazaro Market notified SAL of its intent to close the Store prior to the end of the Term due to the fact that the Lease had expired as of February 29, 2024.  Under the LSA, the failure of 235 Lazaro Market to operate the Store

Location and to continue to purchase inventory from SAL constituted material breaches of the LSA.

16.     Further, the LSA contained clear and unambiguous requirements governing termination and the closure of the Store with which 235 Lazaro Market did not comply.  These requirements were important to SAL and provided benefits to SAL that it has been deprived of, including, for example, the exclusive right of first refusal and the option to purchase all or a portion of the assets of the Store.

17.     Even more egregious is that, upon information and belief, following the improper termination of the LSA and closure of the Store by 235 Lazaro Market, Perez, the former Manager of the Store, opened a competing SuperFresh grocery store at the Store Location only a day or two after closing the Store.

18.     Also upon information and belief, 235 Lazaro Market has failed to properly debrand the Store, and Defendants Pena, Perez, and Perez's entity, Kings Grocery: (1) have offered for sale, and have in fact sold, products bearing SAL's registered trademarks at a retail location that bears the SuperFresh name; and (2) continued to use SAL's registered trademark, service marks, and/or trade dress in the SuperFresh store, including on equipment such as shopping carts.

19.     Defendants' conduct has produced and, unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and deception, to the irreparable injury of consumers and SAL.

20.     As a result of Defendants' actions, SAL is also suffering a loss of goodwill that it has created in its intellectual property, including trademarks and service marks.  This action

seeks permanent injunctive relief and damages for Defendants' trademark infringement, unfair competition, breaches of the LSA, and fraudulent inducement.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over SAL's claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331, 1338(a) and (b), as these claims arise under the Lanham Act, 15 U.S.C. § 1125(a).

22.     This Court has supplemental jurisdiction over the pendant state law claims pursuant to 28 U.S.C. § 1367 because these claims are substantially related to SAL's federal claim.

23.     Defendants are subject to personal jurisdiction in the Commonwealth of Massachusetts and this District pursuant to Mass. Gen. Laws ch. 223A § 3 because: (a) Defendants have sold numerous products into the Commonwealth and this District; (b) Defendants have caused tortious injury to SAL within the Commonwealth and this District; (c) Defendants' unlawful conduct complained of herein has occurred in the Commonwealth and this District; (d) Defendants regularly conduct or solicit business within the Commonwealth and this District; and (e) 235 Lazaro Market and Kings Grocery are registered to conduct business in Massachusetts.

24.     Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to SAL's claims occurred in this District.

## THE PARTIES

25.     Plaintiff SAL is a limited liability company organized and existing under the laws of the State of Missouri with its principal place of business in Saint Ann, Missouri.

26.     Defendant 235 Lazaro Market LLC is a Massachusetts limited liability company that operated the Store and that has a principal place of business at 235 South Street, Holyoke, Massachusetts 01040.

27.     Upon information and belief, Defendant Pena is an individual resident of Connecticut.  Pena is the Owner and Resident Agent of 235 Lazaro Market LLC.

28.     Defendant Kings Grocery is a Massachusetts limited liability company that has a principal place of business, and currently operates a SuperFresh grocery store, at 235 South St., Holyoke, MA 01040.

29.     Upon information and belief, Defendant Yony Perez is an individual resident of Connecticut.  Perez is the former Manager of the Store.  Perez is also the Owner of, a Member of, and the Resident Agent of Kings Grocery.

**FACTS**

**Background of SAL**

30.     SAL is a discount grocery chain that offers store licensing opportunities for independent retailers to operate stores under the SAL brand with the support of SAL's supply and distribution network through which it sells branded food and non-food products.

31.     SAL's products, which are sold under their registered marks, are available for sale in SAL retail stores across the United States.

**The License and Supply Agreement**

32.     On May 13, 2021, SAL and 235 Lazaro Market entered into the LSA.  A true and accurate copy of the LSA is attached hereto and incorporated by reference as **Exhibit A**.

33.     Pena signed the LSA on behalf of 235 Lazaro Market as its Owner.  Pena also acknowledged that he executed the LSA to evidence his intent to be bound by it.

34.     The initial term of the LSA was for five (5) years, during which period 235 Lazaro Market agreed to "continuously operate the Stores at the Premises as a Save-A-Lot hard discount, limited assortment grocery store under the Save-A-Lot Program in accordance with the Program Standards."  Exhibit A, LSA § 6(a).

35.     The license automatically renewed for four (4) additional terms of five (5) years each unless 235 Lazaro Market provided SAL with written notice of its intention not to renew the license no less than 180 days prior to the expiration of the initial term or any renewal term. Exhibit A, LSA § 6(a).

36.     The LSA references the SAL IP and explains that SAL develops, controls, and uses the SAL IP in order to identify to the public the source of services and products marketed under them.

37.     Pursuant to Section 1 of the LSA, SAL granted 235 Lazaro Market, as Licensee, a "nonexclusive, revocable, non-transferable, non-assignable, non-sublicensable license during the term of the Agreement to use the mark SAVE-A-LOT and other such marks as the parties may agree . . . to operate hard discount, limited assortment grocery stores" at specific locations. Exhibit A, LSA § 1.

38.     In Section 3 of the LSA, Licensee acknowledged the SAL IP is SAL's exclusive property, acknowledged the value associated with the Marks, and agreed not to "take or cause to be taken any action which would impair or tend to impair [SAL's] rights in the Marks."  Exhibit A, LSA § 3.

39.     Pursuant to Section 11 of the LSA, Licensee has granted SAL a security interest in and to any and all present and future right, title and interest in all of the real property and other assets and rights of Licensee arising in connection with the Store, including Licensee's leases,

under the Uniform Commercial Code (the "UCC") as adopted in the State of Missouri to secure all obligations and amounts owing or to become due and owing by Licensee to SAL.  A true and accurate copy of the the applicable UCC financing statement evidencing the security interest granted by Licensee in favor of SAL is attached hereto as **Exhibit B** (the "Financing Statement").

40.     In Section 11 of the LSA, Licensee also covenanted that "Licensee will not sell, assign, transfer, convey, or otherwise dispose of its rights in or to its Collateral or any interest therein."  Exhibit A, LSA § 11.

41.     In the event 235 Lazaro Market chose to cease operating the Store for any reason, under Section 8(a) of the LSA, SAL had the option to purchase the assets of the Store prior to the occurrence of certain events, including but not limited to the following (each an "Option Event"):

    a. 235 Lazaro Market's desire to sell, offer to sell, or attempt to sell all or substantially all of the assets or equipment of the Store, including without limitation any inventory or the leasehold interest;

    b. 235 Lazaro Market's cessation of operations at the Store;

    c. 235 Lazaro Market's conversion of the Store to a format other than the SAL Program;

    d. The termination, cancellation, or non-renewal of the Agreement; or

    e. The abandonment or deemed abandonment of the license granted in the LSA.

42.     The LSA required 235 Lazaro Market to provide ninety (90) days written notice to SAL if it decided to cease operating the Store at the Store Location or was considering an opportunity to sell the Assets.  Exhibit A, LSA § 8(b).

43.     In addition, 235 Lazaro Market was obligated to notify SAL in writing of any Option Event, which would automatically trigger SAL's exclusive option to purchase the Assets of the Store.  Exhibit A, LSA § 9.

44.     235 Lazaro Market also agreed that in the event it closed the Store, it would pay SAL all amounts owing and pay SAL's reasonable attorneys' fees if it became necessary for SAL to hire an attorney to enforce any of SAL's rights or 235 Lazaro Market's obligations arising out of the SAL.  Exhibit A, LSA § 6(c)(i)-(ii).

45.     In addition, 235 Lazaro Market agreed to cease all use of, by advertising or otherwise, SAL IP and to de-brand the Store by removing any signage, décor, and color scheme associated with SAL.  Exhibit A, LSA § 6(c)(iii).

46.     Section 10 of the LSA set forth a non-compete provision under which 235 Lazaro Market and its key officers, directors, and management personnel (the "Restricted Group") agreed not to directly or indirectly engage in or have an interest in a competing limited assortment store or directly or indirectly sell the Store assets to a competitor of SAL without SAL's prior written consent during the Term of the LSA or for one (1) year following the LSA's termination.   Exhibit A, LSA § 10.

**The Lease for the Store Location**

47.     On April 20, 1998, SAL entered into a lease with South Street Plaza Associates, LLC ("Lessor") for the premises located at 235 South Street, Holyoke, MA.  A true and accurate copy of the Lease is attached hereto and incorporated by reference as **Exhibit C**.

48.     The Lease provided the option to extend it for four successive extension terms of five lease years.  To exercise the option, Lessee was required to provide Lessor written notice no less than 180 days from to the beginning of each such extension period.

49.     SAL and Lessor executed a Second Amendment to the Lease on October 22, 2018 in which SAL exercised an extension of the Lease for an additional five-year term which would expire on February 29, 2024.  A true and accurate copy of the Second Amendment to the Lease is attached hereto and incorporated by reference as **Exhibit D**.

50.     On May 13, 2021, SAL assigned the Lease to Licensee (the "Assignment") who assumed all obligations, duties, and rights thereunder, including the right to extend the term of the Lease for an additional five or ten years.  A true and accurate copy of the Assignment is attached hereto and incorporated by reference as **Exhibit E**.

51.     235 Lazaro Market needed to extend the term of the Lease in order to comply with its obligation in LSA Section 6(a) to continuously operate the Store at the Store Location.

52.     The Lease for the Store Location was set to expire on February 29, 2024 but could be extended under the lease agreement for an additional five or ten years.

53.     Pena represented to SAL that he had secured an extension of the lease.

54.     Based on this representation, SAL assumed that 235 Lazaro Market would continue to operate the Store at the Store Location, as it was obligated to do under the LSA Section 6(a).  Further, SAL did not try to extend the Lease itself based on Pena's representation that he had already secured an extension of the Lease.

**Defendants' Breaches of the LSA and Infringing Conduct**

55.     As referenced above, Section 10 of the LSA contained a non-compete provision. More specifically, in Section 10(b), members of the Restricted Group agreed not to "directly or indirectly or on behalf of or in conjunction with any other person, persons, partnership or corporation, own, maintain, engage in, or have an interest in the operation of a Limited

Assortment Store which is supplied by any wholesale supplier other than [SAL]" during the Term of the LSA.  Exhibit A, LSA § 10(b).

56.     Members of the Restricted Group were obligated to uphold the same promises for one (1) year following the expiration or termination of the LSA.  LSA, § 10(c).

57.     Further, 235 Lazaro Market "covenant[ed] and agree[d] not to, directly or indirectly, sell the Assets of the Store . . . to a competitor of [SAL] that operates a Limited Assortment Store without the prior written consent of [SAL]."  *Id.*

58.     In the signature pages to the LSA, Pena acknowledged that he is a member of the Restricted Group as defined in the LSA.

59.     Perez is a member of the Restricted Group as defined in the LSA.

60.     At all times pertinent hereto, Perez managed the daily operations of the Store.

61.     As such, Perez was a member of the Restricted Group as defined in Section 10(a) of the LSA because he acted as the Manager of 235 Lazaro Market.

62.     On March 7, 2024, Kings Grocery through Perez submitted a Food Establishment Permit Application to the City of Holyoke Board of Health to open a SuperFresh at the same address as the Store Location (the "SuperFresh Store").  A true and accurate copy of Kings Grocery's Food Establishment Permit Application is attached hereto as **Exhibit F.**

63.     On March 12, 2024, SAL received a Notice of Store Closing (the "Closing Notice") from 235 Lazaro Market and Pena.  Though the mailing date of the Closing Notice was March 11, 2024, the Closing Notice was dated February 29, 2024.

64.     The Closing Notice stated that the Store would close prior to the end of the Term and that the Location Lease had expired as of February 29, 2024.

65. Under the LSA, the failure of 235 Lazaro Market to continuously operate the Store Location and to continue to purchase inventory from SAL constituted material breaches of the LSA.

66. Upon information and belief, around this time, 235 Lazaro Market and/or Pena also sold or transferred certain store assets in which SAL had a security interest, including equipment, to the landlord or Perez.

67. On March 29, 2024, SAL sent a letter to 235 Lazaro Market and Pena giving them formal notice of their material breaches of the LSA and requesting certain assurances from them, including their agreement that they will pay all monetary damages owed to SAL as a result of their breaches and agree to terminate all efforts to sell Store assets to anyone other than SAL.

68. Upon information and belief, the Store closed on or about March 30, 2024.

69. Upon information and belief, the SuperFresh Store operated by Kings Grocery and Perez opened on March 31, 2024.

70. However, 235 Lazaro Market and Pena failed to properly de-brand the Store prior to the opening of the SuperFresh Store. For example, shopping carts bearing the SAL name and mark were not removed and are still available for customers to use. Further, the inside of the Store still contains SAL's distinctive trade dress.

71. On April 1, 2024, SAL received a letter from 235 Lazaro Market and Pena purporting to respond to SAL's March 29th letter. However, that letter did not address the numerous material breaches that SAL had identified. Nor did it provide the assurances that SAL requested.

72. On April 10, 2024, SAL's counsel sent 235 Lazaro Market and Pena a follow-up letter regarding their improper closure of the Store and expressed, among other things, concerns

that SAL-branded products were being sold under the SuperFresh brand name at the new store in violation of state and federal unfair competition laws.

73.     SAL is the owner of numerous federal registrations for trademarks and service marks issued by the United States Patent and Trademark Office ("USPTO").  Among these registrations are the following, copies of which were obtained from USPTO's database:

| Registration Number | Mark |
| --- | --- |
| 1210074 | SAVE-A-LOT |
| 2815192 | SAVE A LOT (*Mark Drawing Type 1*) |
| 5822845 | SAVE A LOT (*Mark Drawing Type 3*) |
| 2522594 | SAVE A LOT (*Mark Drawing Type 3*) |
| 2813215 | SAVE A LOT (*Mark Drawing Type 5*) |
| 3193809 | SAVE A LOT (*Mark Drawing Type 5*) |
| 4288958 | SAVE A LOT MARKET |
| 1785723 | KURTZ |
| 3752338 | KURTZ |
| 1844575 | J. HIGGS |
| 4231650 | MANTIA'S |
| 5094420 | KASKEY'S |
| 5978907 | PICKWELL FARMS |

True and accurate copies of these registrations are attached hereto as **Exhibit G**.

74.     SAL does not sell grocery items for resale to the SuperFresh Store owned and operated by Defendants Perez and Kings Grocery at the Store Location.

75.     Upon information and belief, Key Foods Stores Co-op, Inc., a competitor of SAL's, sells  grocery items for resale to the SuperFresh Store owned and operated by Defendants Perez and Kings Grocery at the Store Location.

76.     Defendants Kings Grocery, Perez, and Pena have together sold SAL-branded products at the SuperFresh Store.  True and accurate copies of photographs of SAL-branded products being sold at the SuperFresh Store without SAL's permission on April 8, 2024 and April 13, 2024 are attached hereto as **Exhibit H**.

77.     Upon information and belief, Defendants Kings Grocery, Perez, and Pena have together continued to use SAL-branded equipment at the SuperFresh Store, including for example, SAL-branded grocery carts and SAL's distinctive trade dress.  True and accurate copies of photographs of SAL-branded grocery carts being used at the SuperFresh Store without SAL's permission on April 8, 2024 and April 13, 2024 are attached hereto as **Exhibit I**.

78.     SAL only authorized 235 Lazaro Market to use its IP pursuant to the terms set forth in the LSA.

79.     SAL has never granted Perez or Kings Grocery any right to use SAL IP.

80.     To date, Defendants have operated, and continue to operate the SuperFresh Store with SAL IP, brand identification, and trade dress despite the fact that Defendants do not have SAL's permission to do so.  Therefore, Defendants are falsely holding themselves out to the public as either affiliated with SAL or as an authorized SAL licensee.

81.     Defendants' unauthorized use of SAL IP, including but not limited to its trademarks, service marks, brand identification, trade dress, and trade names, have resulted in injury to SAL's business reputation, loss of its goodwill, and the weakening, tarnishing and dilution of SAL IP.

82.     Defendants' appropriation of SAL's goodwill and reputation associated with the SAL IP is likely to cause confusion or to cause mistake or to deceive, and is causing harm to SAL.

**COUNT I**
**False Designation of Origin and Unfair Competition Under 15 U.S. C. § 1125(a) of the Lanham Act Against All Defendants**

83.     SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.     As described above, SAL is the owner of numerous federal trademark and service mark registrations issued by USPTO.

85.     Defendants have used SAL IP to operate the SuperFresh grocery store at the Store Location without SAL's permission.  Defendants' actions have been intentional and willful.

86.     Defendants' continued knowing and unauthorized use of SAL IP, including but not limited to its trademarks, service marks, brand identification, trade dress, and trade names,  in connection with the operation of the SuperFresh is likely to cause confusion or deceive the consuming public as to the affiliation, connection or association of the Defendants' business with SAL, or deceive the consuming public as to the sponsorship or approval of its goods, services or commercial activities by SAL.

87.     SAL has no adequate remedy at law and is suffering and will continue to suffer irreparable harm and damages as a result of Defendants' acts unless Defendants are enjoined and restrained from using SAL IP.

88.     As a direct and proximate result of Defendants' acts, SAL has been materially damaged in an amount not yet determined or ascertainable.  At a minimum, however, SAL is entitled to injunctive relief and to an accounting of Defendants' profits, damages, and costs.

## COUNT II
### Common Law Trademark Infringement Against All Defendants

89.     SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

90.     Defendants' unauthorized use of SAL IP, including but not limited to its trademarks, service marks, brand identification, trade dress, and trade names, in connection with the operation of the SuperFresh is likely to cause confusion or deceive the consuming public as to the affiliation, connection or association of Defendants' business with SAL, or deceive the consuming public as to the sponsorship or approval of its goods, services or commercial activities by SAL.

91.     SAL has no adequate remedy at law and is suffering and will continue to suffer irreparable harm and damages as a result of Defendants' acts unless Defendants are enjoined and restrained from using SAL IP.

92.     By virtue of the Defendants' acts, SAL has been materially damaged in an amount not yet determined, but to be proved at trial.

## COUNT III
### Unfair and Deceptive Trade Practices
### Mass. Gen. Laws 93A Against All Defendants

93.     SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

94.     Defendants are "persons" within the meaning of G.L. c. 93A § 1(a).

95.     At all relevant times hereto, Defendants were engaged in trade or commerce for purposes of Mass. Gen. Law c. 93A.

96.     Defendants' actions complained of herein constitute unlawful competition and/or unfair and deceptive trade practices in violation of Mass. Gen. Laws 93A.

97.     Defendant's violations of G.L. c. 93A, § 11 were willful and knowing.

98.     Defendants' unfair and deceptive acts include, but are not limited, to Pena's false representation to SAL that he obtained a Lease so that the Store could remain open at the Store Location, Defendants' opening of a competing SuperFresh grocery store that is supplied by another wholesale supplier at the Store Location only days after closing the Store, and Defendants' infringing conduct by using SAL IP at the new SuperFresh grocery store without SAL's permission.

99.     SAL has suffered injury as a result of Defendants' unfair competition and/or unfair and deceptive trade practices.

**COUNT IV**
**Breach of Contract Against 235 Lazaro Market and Pena**

100.    SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

101.    SAL and 235 Lazaro Market entered into the LSA on May 13, 2021.

102.    235 Lazaro Market and Pena have breached the LSA in numerous ways, including but not limited to, by:

   a.   Failing to continuously operate the Store at the Store Location as a SAL hard discount, limited assortment grocery store under the SAL Program in accordance with the Program Standards;

   b.   Failing to purchase inventory from SAL for the Store in accordance with Section 12(c) of the LSA;

   c.   Failing to provide SAL proper notice as set forth in Section 8 of the LSA;

   d.   Failing to comply with the Close Down Requirements set forth in Section 6 of the LSA;

17

    e.   Violating the Non-Compete in Section 10 of the LSA, including by directly or indirectly selling the Assets of the Store to a competitor of SAL without SAL's prior written consent; and

    f.   Selling or transferring assets in violation of Section 11 of the LSA.

103.    235 Lazaro Market's and Pena's breaches of the LSA were material.

104.    SAL suffered damages as a direct and proximate result of 235 Lazaro Market's and Pena's breaches of the LSA and incurred damages in an amount that will later be proven at trial.

**COUNT V**
**Breach of Contract Against Perez**

105.    SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

106.    At all times pertinent hereto, Perez was the Manager of the Store and responsible for overseeing its day-to-day operations.

107.    Perez was a member of the Restricted Group as defined in Section 10(a) of the LSA because he acted as the Manager of 235 Lazaro Market until it closed.

108.    Under Section 10(b) of the LSA, each member of the Restricted Group covenanted and agreed "not to directly or indirectly or on behalf of or in conjunction with any other person, persons, partnership or corporation, own maintain, engage in, or have an interest in the operation of a Limited Assortment Store which is supplied by any wholesale supplier other than Licensor."

109.    Under Section 10(c) of the LSA, each member of the Restricted Group further covenanted and agreed not to directly or indirectly, individually or in connection with any other party, person, persons, partnership or corporation, own, maintain, engage in, or have an interest

in the ownership or operation of a Limited Assortment Store which is supplied by any other wholesale supplier other than SAL within the first year after the termination of the LSA.

110.    Upon information and belief, following the improper termination of the LSA and closure of the Store by 235 Lazaro Market, Perez, the former Manager of the Store, opened a competing SuperFresh grocery store that is supplied by another wholesale supplier at the Store Location only days after the Store was closed.

111.    Perez's actions constituted a material breach of the LSA.

112.    SAL suffered and is suffering damages as a direct and proximate result of Perez's breaches of the LSA and incurred damages in an amount that will later be proven at trial.

## COUNT VI
### Fraud Against Pena and 235 Lazaro Market

113.    SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

114.    235 Lazaro Market was obligated to extend the term of the Lease that SAL had assigned to it in order to comply with its obligation under the LSA to continue to operate the Store at the Store Location.

115.    SAL notified 235 Lazaro Market the Lease for the Store Location was set to expire on February 29, 2024 but could be extended under the lease agreement for an additional five or ten years.

116.    Pena represented to SAL that he had secured an extension of the Lease.

117.    Based on Pena's representation, SAL assumed that 235 Lazaro Market would continue to operate the Store at the Store Location, as it was obligated to do under the LSA. Further, SAL did not try to extend the Lease itself based on Pena's representation that he had already secured an extension of the Lease.

19

118.    However, on March 12, 2024, 235 Lazaro Market notified SAL of its intent to close the Store prior to the end of the Term and that the Location Lease had expired as of February 29, 2024.

119.    SAL suffered damages proximately caused as a result of Pena's false representation that he had secured an extension of the Lease because the Store closed and a competing SuperFresh store was opened at the Store Location as a result in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, SAL respectfully requests that this Court:

A.   Find that the Defendants have infringed SAL's trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

B.   Grant SAL preliminary and permanent injunctive relief restraining the Defendants from using SAL's trademarks, trade name, logos, or distinctive color scheme;

C.   Order Defendants to pay SAL damages sustained in consequence of such trademark infringement, trebled as provided by law, and to account for all gains, profits and advantages derived by the Defendants from such trademark infringement;

D.   Order Defendants to pay SAL the costs of this action and reasonable attorneys' fees, as provided for in Section 35 of the Lanham Act, 15 U.S.C. § 1117;

E.   Order Defendants to pay SAL multiple damages and attorneys' fees pursuant to Chapter 93A;

F.   Order that Defendants, including all directors, officers, partners, agents, servants, employees, representative, and attorneys, and all person in active concert or

participation with them, be preliminarily and permanently enjoined from otherwise competing unfairly with SAL;

G.  Grant SAL preliminary and permanent injunctive relief restraining Perez and Kings Grocery from operating a SuperFresh at the Store Location in violation of the LSA;

H.  Enter judgment for SAL against Defendants on all of the foregoing counts;

I.  Enter an award of damages to SAL in an amount to be proved at trial; and

J.  Award SAL any such other and further relief as this Court may deem proper and just.

Dated: April 17, 2024                      Respectfully Submitted,

                                           TROUTMAN PEPPER HAMILTON
                                           SANDERS LLP


                                            */s/ William M. Taylor*
                                           William M. Taylor (BBO #624981)
                                           High Street Tower
                                           125 High Street, 19th Floor
                                           Boston, MA 02110
                                           (617) 204-5186
                                           William.Taylor@troutman.com

                                           A. Christopher Young (*application for
                                           admission pro hac vice forthcoming*)
                                           Erica H. Dressler (*application for admission
                                           pro hac vice forthcoming*)
                                           3000 Two Logan Square
                                           Eighteenth & Arch Streets
                                           Philadelphia, PA  19103-2799
                                           (215) 981-4000
                                           Christopher.Young@troutman.com
                                           Erica.Dressler@troutman.com

                                           *Attorneys for Plaintiff Moran Foods, LLC
                                           d/b/a Save-A-Lot Ltd.*

## CERTIFICATE OF SERVICE

I, William M. Taylor, hereby certify that on April 17, 2024, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ William M. Taylor*
William M. Taylor (BBO #624981)